KANKAKEE ELECTRIC RAILWAY COMPANY

v.

HIRAM WHITTEMORE.

*Street Railways—Horse Killed by Electricity—Action Against Electric Railway Company to Recover Damages Therefor—Alleged Negligence of Defendant's Employes—Evidence.*

1. In an action brought against an electric street railway company to recover damages for the death of a horse which was killed through the knocking upon him by a trolley pole of one of defendant's cars, of a telephone wire which, in falling, touched the company's wire and completed a circuit, *held*, that the evidence justified the finding that defendant's servants were negligent, and that plaintiff's servant in charge of his horse was not negligent.

2. Evidence tending to show that the telephone wire was negligently left in its position by the telephone company or the city was properly rejected, this being foreign to the question of defendant's negligence.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Kankakee County; the Hon. C. R. STARR, Judge, presiding.

Mr. D. H. PADDOCK, for appellant.

Mr. WILLIAM POTTER, for appellee.

MR. JUSTICE LACEY. The appellant constructed an electric railway in the streets of Kankakee city, under a franchise under the city corporation, granted in July, 1891. The cars were operated by what is known as the trolley wire

system, or overhanging wire and trolley pole system.    Appellee is a grocer in the city of Kankakee, having his store on the south side of Court street, and the east side of Dearborn avenue, at the corner.    Court street runs from east to west, and Dearborn avenue runs from north to south, crossing each other at right angles.    Schuyler avenue is the next avenue west of Dearborn, and distant 330 feet.    At the point where Court street crosses Dearborn avenue, reaching from the corner on the west side of Dearborn avenue and the south side of Court street, and running diagonally north and across Court street to the east side of Dearborn avenue and north side of Court street, was stretched a telephone wire, about eighteen inches above the trolley wire and diagonally across it, which telephone wire had been there several years, and had been, prior to the time of the accident which is the cause of this action, for a year and a half not in use, but what is called a dead wire.

The declaration charges, in three separate counts, that appellant was propelling cars on its railway along Court street by means of trolley wires and trolley poles, and that appellee was the owner of a mare, and there was running across the said Court street, over the electric wire and close thereto, a certain other wire, which had there remained a long time, etc., and might and could be easily seen by the servant of the defendant engaged in operating the said cars; that appellee's servant was driving his horse in said street with due care on his part, when a car of appellant, by its servant, carelessly and negligently permitted the trolley wire pole connected with said car to come in contact with the wire run off and across the said electric wire, broke the same, knocked it onto the electric wire, and thus against the horse of the appellee, which said wire became charged with electricity and then and there killed the said horse.    The second charges the manner of killing the horse in respect to the manner of contact of the horse with the telephone wire; that the trolley pole, on account of carelessness of appellant's servant driving the car, struck the said wire onto the electric wire of appellant, and then against the horse of

appellee, and by means thereof, killed the horse. The third count charges that appellant, while running its car negligently and carelessly, managed the same so that a certain wire, charged with great electric power, was thrown against appellee's horse, which was killed.

There was a plea of not guilty and trial by jury, and verdict for appellee for $180, upon which judgment was rendered. From such judgment this appeal is taken.

The errors assigned are that the verdict is against the weight of the evidence, that the court excluded proper evidence on part of appellant and also refused to give proper instructions offered by appellant. The point of attack on the evidence is that it failed to show any negligence on the part of appellant's servant and that it showed negligence on the part of appellee's servant driving the horse. Therefore we will only notice the evidence so far as it bears on those points. It appears that the trolley pole is operated by a rope or cord and can be lowered or raised by it at the will of the operator or conductor, and it is liable to get off the trolley wire, from which it communicates the electric power to the propelling apparatus or engine of the car, and it will then fly up and stand straight up at the point where this telephone wire crosses the trolley wire as much as five feet, if not controlled; this would put it two or three feet above the telephone wire, when standing in that position. We think it quite clearly appears from the evidence of Hatch, Halsey, Bonfield and Laford, sworn for appellee, that on the day of the accident this trolley pole got off of the trolley wire east of Dearborn street, and a short distance east of the telephone wire, when it crossed the trolley wire and flew up above the telephone wire, and the car passing along westerly, the force of the trolley pole tore the telephone wire loose from the pole to which it was attached, at the corner near Fries' drug store, on the south side of Court street; that the wire fell down at that end, and being still attached at the other side of the street, on the north, at Orr's store it fell down to the ground at the south end, and resting on the trolley wire in the center of the street, and the broken end on one of the

rails of the track, formed a complete circuit of electricity, and the wire formed a kind of a loop in the street. Within a very short time after the car passed by, a boy by the name of Klitz, who was, at the time, driving the horse of appellee attached to his delivery wagon, attempted to cross the street at this point, and not observing this telephone wire his horse ran over it, and was instantly killed by the electric current passing through the wire. While the manner of the accident is not precisely stated in the declaration, we think that the allegations of the second and third counts are general enough so that there is no variance.

It is true that Huffman, the conductor of the car at the time of the accident, denies that the trolley pole struck the telephone wire, and testified that he was on the back end of the car at the time he passed down the street west along Court street, and had hold of the rope attached to the pole all the way down the street; and he says when the pole gets out of position it pulls a heavy weight on the rope, and you feel a jerk, so he knew the trolley pole was not off. The trolley pole, he says, got off the wire the first time just east of Schuyler avenue; that would be west of this telephone wire a block off. There is a grade down past Dearborn and Schuyler avenues to the west, where the car will run by its own weight without any propelling power. But we think the jury was fully justified in giving credence to appellee's witnesses and rejecting the evidence of Huffman. If the point then was established according to the contention of appellee that this pole was allowed to remain off in so dangerous a place as where the telephone wire crossed the trolley wire and allowed to knock that wire loose unobserved, it would appear to have been an act of negligence on the part of the conductor, for which the appellant was responsible. The presence and position of this telephone wire must have been well known to appellant, as it was in plain view, and it must have been known if the trolley pole should be allowed to be loose at that point while the car was being run, that there was great danger of breaking loose the telephone wire, and its dropping down as it did, and the great consequent

danger of some one getting against it. Under the circumstances we think the jury was amply justified in finding negligence, as charged in the declaration. The circumstance of the driver of appellant's horse not seeing the wire on the occasion was not remarkable, and we think that the jury was also justified in finding for appellee that his servant was in the exercise of care.

The rejection of the appellant's evidence offered by it to show that the city of Kankakee or the telephone company were negligent in leaving the telephone wire suspended in the manner it was and that appellant had no right to remove it, was not error. Neither was it error in the court below refusing the appellant's instructions on the same point. These were matters entirely foreign to the issue being tried, *i. e.*, whether appellant was or was not guilty of negligence in operating its cars and in knocking down the telephone wire and leaving it in so dangerous a position. If the wire was dangerous in the position it was in, on account of the liability of being knocked down by the trolley pole attached to the passing cars of appellant, it was required to use corresponding care to avoid accident.

The judgment of the court below is affirmed.

*Judgment affirmed.*